Rel: September 27, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

———————————————

## SC-2024-0224

———————————————

**Ex parte E3 Pest Control, LLC, d/b/a E3 Termite and Pest Control, and Michael Adams**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Timothy Garfield and Angela Garfield**

**v.**

**E3 Pest Control, LLC, d/b/a E3 Termite and Pest Control et al.)**

**(Mobile Circuit Court: CV-23-902662)**

BRYAN, Justice.

Michael Adams and E3 Pest Control, LLC, d/b/a E3 Termite and Pest Control ("E3"), petition this Court for a writ of mandamus directing

the Mobile Circuit Court to transfer this action to the Baldwin Circuit Court. For the reasons explained below, we grant the petition and issue the writ.

Background

Timothy Garfield and Angela Garfield commenced this action in December 2023, naming E3 and its sole member, Adams, as defendants. The complaint also included fictitiously named defendants. In summary, the Garfields alleged that, in 2021, they had entered into a contract with E3 for the inspection and treatment of a residence that the Garfields had purchased in Baldwin County to identify and prevent termite infestations. According to the Garfields, they discovered termite damage and a termite infestation in the residence in July 2022.

The Garfields' complaint asserted the following counts: (1) fraudulent suppression; (2) fraudulent misrepresentation, including promissory fraud; (3) negligence; (4) negligent and/or wanton hiring, training, supervision and retention of employees; (5) breach of contract; (6) wantonness; (7) unjust enrichment; (8) promissory estoppel; and (9) equitable estoppel. The Garfields sought awards of compensatory and punitive damages and "such other relief, including, without limitation,

injunctive relief, declaratory relief, specific[-]performance relief, and other forms of equitable relief, as may be just."

In January 2024, E3 and Adams ("the defendants") filed a motion to transfer the action to the Baldwin Circuit Court, arguing that Baldwin County was the proper venue for the action pursuant to Rule 82, Ala. R. Civ. P., because, they said, the Garfields' residence is the "subject matter of the action" and, alternatively, that the action should be transferred in the interest of justice pursuant to § 6-3-21.1, Ala. Code 1975. The Garfields opposed the motion to transfer, noting that E3's principal place of business is located in Mobile County. See § 6-3-7(a), Ala. Code 1975 ("All civil actions against corporations may be brought in any of the following counties: … (2) In the county of the corporation's principal office in this state …."). On March 1, 2024, the Mobile Circuit Court entered an order denying the motion to transfer. The defendants then filed their mandamus petition.

## Standard of Review

"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."

3

Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995).

> "'A trial court's denial of a motion to transfer based on improper venue is reviewable by a petition for writ of mandamus, and "such a petition is due to be granted if the petitioner makes a clear showing of error on the part of the trial court." Ex parte Alabama Power Co., 640 So. 2d 921, 922 (Ala. 1994).'"

Ex parte Thomasville Feed & Seed, Inc., 74 So. 3d 940, 942 (Ala. 2011)(quoting Ex parte Burr & Forman, LLP, 5 So. 3d 557, 565 (Ala. 2008)).

## Analysis

The defendants essentially assert three arguments in support of their contention that this action should be transferred to Baldwin County. For the reasons explained below, we agree that the action must be transferred. In reaching this conclusion, however, we find it unnecessary to address the defendants' argument predicated on the provisions of § 6-3-21.1; therefore, we express no opinion concerning that argument.

The first issue addressed by the mandamus petition is which venue statute applies in an action against a limited-liability company ("LLC"): § 6-3-2 or § 6-3-7, Ala. Code 1975. The defendants argue that § 6-3-2 applies to actions against LLCs. See Ex parte WMS, LLC, 170 So. 3d

4

645, 650 (Ala. 2014). In response, the Garfields argue that this Court should instead adopt the rationale set forth in Justice Mitchell's special writing in Ex parte Alabama Power Co., 369 So. 3d 662, 669-72 (Ala. 2022)(plurality opinion), wherein he determined that certain of this Court's recent decisions had correctly indicated that § 6-3-7, instead of § 6-3-2, applies to actions against LLCs. For the reasons explained below, we conclude that which venue statute applies in an action asserted against an LLC is not the dispositive issue presented by this mandamus petition. Therefore, we need not decide at this time whether the Court should adopt the rationale set forth in Justice Mitchell's special writing in Ex parte Alabama Power Co., and we decline to express an opinion regarding that question in this case.

As the defendants' petition also addresses, the more significant features of the present action are really that it has been asserted against an individual and that the action involves real property. The defendants cite Ex parte Travis, 573 So. 2d 281 (Ala. 1990), in support of their position on this point. The Garfields argue that Ex parte Travis is inapposite because that case involved a partnership and not an LLC. However, as the Court's opinion made clear, the precise nature of the

business entity at issue in Ex parte Travis was not the pertinent inquiry in that case.

In Ex parte Travis, this Court explained the following regarding the circumstances presented there: "The parties to this petition have presented a great deal of argument concerning whether a limited partnership should be treated as an individual or as a corporation for venue purposes. However, for the reasons set out below, that issue is not dispositive and will not be addressed." 573 So. 2d at 282 (emphasis added). The Court continued:

> "As stated earlier, [the] complaint named [Y.E.] Travis as a defendant both individually and in his capacity as the general partner of Boat Storage[, Ltd.]. The claims asserted by [the plaintiff] included a claim seeking to enforce a mechanic's lien, filed pursuant to Ala. Code 1975, § 35-11-212, against the boat storage facility and the property upon which it is situated. When the subject matter of the action is real estate, venue for actions against resident individuals is governed by Ala. Code 1975, § 6-3-2(b)(1)[,] and Rule 82(b)(1)(B), Ala. R. Civ. P."

Id. (emphasis added).

Section 6-3-2 provides:

> "(a) In proceedings of a legal nature against individuals:
>
> "(1) All actions for the recovery of land, of the possession thereof, or for a trespass thereto must

be commenced in the county where the land or a material part thereof lies.

"(2) All actions on contracts, except as may be otherwise provided, must be commenced in the county in which the defendant or one of the defendants resides if such defendant has within the state a permanent residence.

"(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred.

"(b) In proceedings of an equitable nature against individuals:

"(1) All actions where real estate is the subject matter of the action, whether it is the exclusive subject matter of the action or not, must be commenced in the county where the same or a material portion thereof is situated.

"(2) If the action is to enjoin proceedings on judgments in other courts, it may be commenced in the county in which such proceedings are pending or judgment entered.

"(3) Except as may be otherwise provided, actions must be commenced in the county in which the defendant or a material defendant resides.

"(4) In the case of nonresidents, actions must be commenced in the county where the subject of the action or any portion of the same was when the

7

claim arose or the act on which the action is founded was to be performed."

(Emphasis added.)

Rule 82(b), Ala. R. Civ. P., provides:

"(b) Venue of Actions. Venue of actions shall not be affected by these rules except as the statute for venue for actions against individuals at law (§ 6-3-2(a)) and the statute for venue for actions against individuals in equity (§ 6-3-2(b)) are inconsistent. Such inconsistencies are resolved as follows:

"(1) <u>Against Resident Individuals</u>. Actions against an individual or individuals having a permanent residence in this state:

"(A) Must be brought in the county where the defendant or any material defendant resides at the commencement of the action, except that if the action is a personal action other than an action on a contract, it may be brought either in the county where the act or omission complained of occurred, or in the county of the permanent residence of the defendant or one of them;

"(B) <u>Must, if the subject matter of the action is real estate, whether or not exclusively, or if it is for recovery or the possession thereof or trespass thereto, be brought in the county where the real estate or a material portion thereof is situated</u>."

(Emphasis added.)

8

In granting the mandamus petition at issue in that case, the <u>Ex parte Travis</u> Court reasoned:

> "The language of both the rule and the statute is mandatory.  A judge's failure to follow their mandate would be an abuse of discretion.  …  Actions concerning real estate <u>must</u> be brought in the county where the real estate, or a material portion thereof, is located, 'whether it is the exclusive subject matter of the action or not.'  Ala. Code 1975, § 6-3-2(b)(1).
>
> "Because venue for [the plaintiff]'s mechanic's lien claim against Travis <u>as an individual</u> was appropriate only in Elmore County, the trial court abused its discretion by denying Travis and Boat Storage's motions for transfer.  The petition for writ of mandamus is therefore granted, and the court is ordered to vacate its orders denying the motions for transfer, and to transfer the pending lawsuit to Elmore County."

573 So. 2d at 282-83 (final emphasis added).

In addition to naming E3 as a defendant in this action, the Garfields have named Adams, in his individual capacity, as a defendant.  Under the rationale of <u>Ex parte Travis</u>, the statute and procedural rule governing venue as to individuals -- § 6-3-2 and Rule 82(b)(1), respectively -- apply when an action has been asserted against both an individual and a separate business entity if the subject matter of the action is real property.  The Garfields argue that, notwithstanding their inclusion of Adams as a defendant in their complaint, Rule 82(c) permits

9

them to bring this action in Mobile County because, they say, venue is proper there as to E3. Rule 82(c) provides, in relevant part: "Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought." However, as the defendants note, the Ex parte Travis Court expressly considered Rule 82(c) and reasoned that it does not supersede the provisions of § 6-3-2(b)(1) and Rule 82(b)(1)(B): "This Court is aware of what might appear to be an inconsistency between the mandatory language of § 6-3-2(b)(1) and Rule 82(b)(1)(B), on the one hand, and the 'liberal joinder' provision of Rule 82(c), on the other. However, both the statute and the rule are unambiguous." 573 So. 2d at 282.

The Garfields note that Ex parte Travis was decided in 1990, and they cite Ex parte Fontaine Trailer Co., 854 So. 2d 71 (Ala. 2003), for the proposition that § 6-3-7, the current version of which was enacted in 1999, rendered Rule 82(c) applicable to domestic corporations, which is a category to which the Garfields contend E3 belongs. Although this Court did discuss the general applicability of Rule 82(c) to domestic corporations in Ex parte Fontaine Trailer Co., the issues presented by that case did not require any consideration of the mandatory language of

10

Rule 82(b)(1)(B) and § 6-3-2(b)(1), which dictate the venue for actions asserted against individuals when the subject matter of the action is real estate, whether exclusively or not. Moreover, in addressing the actual issue presented in Ex parte Fontaine Trailer Co., which involved the applicability of Rule 82(c) to foreign corporations, the Court expressly noted that Rule 82(c) had not worked a substantive change on venue law, reasoning: "Rule 82(c) does not 'affect the ... venue of actions,' ... but rather, at the time of its promulgation in 1973, ... simply stated the existing rule of practice." 854 So. 2d at 85 (quoting § 6.11 of Amendment No. 328 to the Alabama Constitution of 1901, which is now found at Article VI, § 150, of the Alabama Constitution of 2022).

Thus, the fact that Rule 82(c) is generally applicable to domestic corporations does not mean that the pendent venue principles provided by that subsection also supersede or override the mandatory language of Rule 82(b)(1)(B) and § 6-3-2(b)(1). Therefore, even assuming, without deciding, that E3 should be treated as a domestic corporation for venue purposes, the inclusion of Adams as a defendant means that this action must be transferred to Baldwin County -- where the Garfields' residence is located -- if the "subject matter" of the action is the residence within

11

the meaning of § 6-3-2(b)(1) and Rule 82(b)(1)(B).  See Ex parte Cannon, 508 So. 2d 222, 225 (Ala. 1987)(considering a complaint asserted against a number of individuals and corporations and reasoning: "The language of § 6-3-7 … does not permit venue to be established in one county when the lawsuit's subject matter is real estate located, or substantially located, in another county ….  The venue of such a proceeding is governed by § 6-3-2(b)(1).").  Consequently, we must resolve that issue first, and, for the reasons explained below, we conclude that doing so disposes of this petition.  The Court recently addressed a similar inquiry in Ex parte Mullen, [Ms. SC-2023-0278, Jan. 12, 2024] \_\_\_\_ So. 3d \_\_\_\_ (Ala. 2024).

Ex parte Mullen involved an action asserting claims of breach of contract, breach of the implied warranty of habitability, fraud, negligence, and fraudulent suppression stemming from the sale of an allegedly defective residence by Richard Mullen and Cheryl Mullen to Karl Leo and Fay Leo.  In considering whether the county where the residence was located was the proper venue for the action, we noted that "Rule 82(b)(1)(B) was intended to incorporate the pertinent provisions of the predecessor statutes to § 6-3-2(a) and § 6-3-2(b) to provide a uniform

rule to govern venue for 'specific actions involving land.'" ____ So. 3d at ____. Moreover,

> "[u]nder the clear language of Rule 82(b)(1)(B), application of that rule does not depend on whether the action at issue involves legal or equitable claims. Instead, venue is dictated by Rule 82(b)(1)(B) 'if the subject matter of the action is real estate, whether or not exclusively, or if it is for recovery or the possession thereof or trespass thereto.'"

Id. at ____.

Like the complaint at issue in Ex parte Mullen, the Garfields' complaint in this case "does not involve a request for recovery or possession of the property, nor does the action involve trespass to the property. Thus, the remaining question is whether 'the subject matter of the action is real estate, whether or not exclusively.' See [Rule 82(b)(1)(B)]." ____ So. 3d at ____.

In ascertaining the meaning of the phrase "subject matter," we further reasoned as follows in Ex parte Mullen:

> "[T]he pertinent language of Rule 82(b)(1)(B) is derived from the predecessor statutes to § 6-3-2. The phrase 'subject matter' first appeared in one such statute in § 3760 of the Alabama Code of 1876. This Court has explained that '"[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says."' Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So. 2d 293, 296 (Ala.

13

1998)(quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)).

> "The first edition of Black's Law Dictionary was published in 1891. At that time, Black's Law Dictionary defined 'subject matter' as: 'The thing in controversy, or the matter spoken or written about.' Black's Law Dictionary 1130 (1st ed. 1891). At the time Rule 82(b)(1)(B) was adopted in 1973, Black's Law Dictionary defined 'subject matter' as: 'The subject, or matter presented for consideration; the thing in dispute; the right which one party claims as against another .... Nature of cause of action, and of relief sought.' Black's Law Dictionary 1594 (Rev. 4th ed. 1968). The current edition of Black's Law Dictionary defines 'subject matter' as: 'The issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute.' Black's Law Dictionary 1723 (11th ed. 2019)."

____ So. 3d at ____.

In relevant part, we applied the plain meaning of the phrase "subject matter" as follows:

> "[T]he gravamen of the Leos' complaint is that the Mullens improperly designed and constructed the residence located on the property and sold it to the Leos in an uninhabitable condition by making false advertisements and representations concerning the condition of the residence. …
>
> "In particular, we note that the Leos averred that the Mullens 'had a duty to exercise reasonable care by properly designing and constructing the [Leos]' home in a good and workmanlike manner free from defects. [The Mullens] breached their duty to exercise reasonable care by [im]properly designing and constructing the [Leos]' home.' The Leos also averred that, '[i]n entering into the contract for the purchase of the [p]roperty, [the Mullens] made certain

14

materially false representations to the [Leos], including but not limited to advertisements and representations that the home was new as well as representations that the home was free from known and latent defects.'

"Thus, '[t]he thing[s] in controversy' in this case are the condition of the residence located on the property and the Mullens' representations regarding that condition. See Black's Law Dictionary 1130 (1st ed. 1891). Moreover, the condition of the residence and the Mullens' related conduct are the 'matter[s] presented for consideration [and] the thing[s] in dispute.' See Black's Law Dictionary 1594 (Rev. 4th ed. 1968). The rights asserted by the Leos against the Mullens are reasonable care in the design and construction of the residence and true representations concerning the condition of the residence. See id. Correspondingly, the residence is 'the thing in which a ... duty has been asserted,' considering that the Leos averred that the Mullens had 'a duty to exercise reasonable care by properly designing and constructing the [Leos]' home in a good and workmanlike manner free from defects.' See Black's Law Dictionary 1723 (11th ed. 2019). Therefore, we conclude that, in also considering the historical plain meaning of the phrase 'subject matter,' as used in the context of Rule 82(b)(1)(B), the property is the subject matter of the Leos' action against the Mullens."

\_\_\_\_ So. 3d at \_\_\_\_.

In this case, the Garfields argue that their residence is not the "subject matter" of their action within the meaning of Rule 82(b)(1)(B) because, they say, the "gravamen" of their complaint is fraud. Answer at 21. They also note that a breach-of-contract claim is generally regarded as a transitory action. See Ex parte Mullen, \_\_\_\_ So. 3d at \_\_\_\_

15

n.1 ("'At common law a defendant could be sued in a transitory action anywhere he could be served ....' Ex parte City of Birmingham, 507 So. 2d 471, 473 (Ala. 1987)."). Citing Cadence Bank, N.A. v. Robertson, 335 So. 3d 1142, 1145 (Ala. 2021), the Garfields argue that they are the "masters of their complaint [and] are 'entitled to choose the theory of liability on which [they] will rely.'" Answer at 22. We agree that the Garfields are the masters of their complaint. In examining their chosen theories of liability, however, we cannot agree that their residence is not the subject matter of at least some of those theories.

Even assuming, without deciding, that their residence is not the subject matter of the Garfields' breach-of-contract and fraud-based counts, their complaint also asserts six other counts that they do not address in their answer. Regarding their negligence claim, the Garfields alleged that

> "the [d]efendants had an independent duty at common law as a regulated licensee of the [Alabama Department of Agriculture and Industries] to fully provide all necessary termite prevention and control services for the [Garfields]' [h]ome in order to protect it against termite infestation and damage and to do so in a reasonable and workmanlike manner."

16

(Emphasis added.) The Garfields further alleged that Adams "owed independent duties to the [the Garfields] to ensure that the work performed at their [h]ome by employees operating under his license met the minimum standards set forth by the [Alabama Department of Agriculture and Industries'] rules and regulations." (Emphasis added.) The Garfields' wantonness and "negligent and/or wanton hiring, training, supervision & retention of employees" claims also rely on these same or similar allegations. Of course, the Garfields' complaint further alleges that the defendants breached these duties and proximately caused resulting damage to their residence, contending: "[T]he [h]ome will require substantial repairs, including the potential that the home may need to be rebuilt."

Thus, at least insofar as these three claims are concerned,

"'[t]he thing[] in controversy' … [is] the condition of the residence located on the property …. See Black's Law Dictionary 1130 (1st ed. 1891). Moreover, the condition of the residence and the [the defendants]' related conduct are the 'matter[s] presented for consideration [and] the thing[s] in dispute.' See Black's Law Dictionary 1594 (Rev. 4th ed. 1968). The rights asserted by the [Garfields] against the [defendants] are reasonable care in the [inspection and treatment] of the residence …. See id. Correspondingly, the residence is 'the thing in which a … duty has been asserted,' considering that the [Garfields alleged] that the [defendants] had 'a duty to [protect it against termite infestation and

17

damage and to do so in a reasonable and workmanlike manner].' See Black's Law Dictionary 1723 (11th ed. 2019)."

Ex parte Mullen, ____ So. 3d at ____.

Therefore, we conclude that, in considering the historical plain meaning of the phrase "subject matter," as used in the context of Rule 82(b)(1)(B), the Garfields' real property is the subject matter of at least three of the Garfields' claims. Furthermore, in light of the mandatory language of Rule 82(b)(1)(B), venue for this action is proper only in Baldwin County, where the Garfields' residence is located, even assuming, without deciding, that Mobile County would be a proper venue for some of their other claims, had those claims been asserted alone. See Ex parte Mullen, ____ So. 3d at ____ ("'Actions concerning real estate must be brought in the county where the real estate, or a material portion thereof, is located, "whether it is the exclusive subject matter of the action or not."'" (quoting Ex parte Travis, 573 So. 2d at 282, quoting in turn § 6-3-2(b)(1))).

The cases that the Garfields cite in support of their position are materially distinguishable. In Alabama Youth Services Board v. Ellis, 350 So. 2d 405, 408 (Ala. 1977), the Court stated: "The allegation that one of the parties owns real estate, or has substantial rights in real estate

18

which are dependent upon the settlement of the controversy, is not enough to make real estate the 'subject matter' of the suit." The case that the Ellis Court cited for the quoted proposition was Clark v. Sanders, 267 Ala. 674, 676, 103 So. 3d 370, 371 (1958), which was a case in which the Court determined that the bill at issue was "simply one to determine the marital status of the parties." The Clark Court reasoned: "No other relief was sought and in our opinion the real estate which [the alleged common-law husband] was alleged to own is not in any way directly involved." 267 Ala. at 676, 103 So. 2d at 372. Clearly, the present action does not involve a determination of the parties' marital status, and the Garfields' real property is directly involved here.

In Ellis, various public officials, a number of private citizens, and a legal guardian of a student sued the Alabama Youth Services Board ("the Board") seeking to prevent the closure of and to secure funding for a particular boys' school ("the school"). Among the relief requested was an order requiring the Board to convey the real property on which the school was situated to a bank to hold the property as trustee. Although the school was located in Jefferson County, the Ellis Court determined, for

19

several reasons, that venue for that case was proper only in Montgomery County.

First, the Ellis Court reasoned that venue was proper in Montgomery County because the action was one against a state agency whose "official residence" was located there; the Court stated: "[T]he allegations in this case pertaining to the location of real estate in Jefferson County, while they may resolve a venue question in an ordinary case, do not control a case such as this where the action is one against a state agency." 350 So. 2d at 408. The Ellis Court also determined that the subject matter of the action was not truly the real property on which the school was located, stating: "The nature of this action and of the relief sought was a declaratory judgment, seeking a judicial construction of [a statute], and for a court order establishing a financial floor on the operation of the [school] because of an alleged statutory mandate." Id.

The Ellis Court further determined that the school was not a "material defendant," reasoning: "There is nothing alleged in this complaint which is antagonistic to the interest of [the school]; indeed, the contrary is true. The gist of the entire suit is to sustain the operation of [the school] against a reduction of its financial resources by the [Board]."

20

Id. The Court reached a similar conclusion regarding the bank: "At most the Bank was only a proper party as a corporate trustee. Such a party cannot control venue where, as here, it has no interest in the principal matter in controversy." Id. at 409

In contrast to the action at issue in Ellis, the Garfields' action has not been asserted against a state agency and is not a declaratory-judgment action seeking judicial construction of a statute allegedly mandating a financial floor for the operation of a public entity. Moreover, the allegations of the Garfields' complaint against Adams, whose inclusion as a defendant in his individual capacity renders Rule 82(b)(1)(B) applicable to the present action, are clearly antagonistic to Adams. Therefore, we conclude that the rationale and holding of Ellis are inapplicable to the present action.

In another case that the Garfields cite, Ex parte Diamond, 596 So. 2d 423, 425 (Ala. 1992), "the complaint did not involve land; the relief sought was monetary compensation arising from a note executed by [a] partnership in which each partner was a one-third owner." The Court reasoned that the subject matter of the action at issue was not real estate because the action was one based on contract and that "[a]n

21

interpretation of the note and of the partnership agreement w[ould] determine [the defendant]'s liability."  Id.

By contrast, and as explained above, the Garfields' complaint does not assert only contractual rights, because at least three of the Garfields' claims are based on alleged duties that they contend were imposed upon the defendants' work in and on the Garfields' residence by the common law and by Alabama's positive law, alleged breaches of those duties, and resulting damage, which they further allege may require a rebuilding of the residence.  As also already noted,

> "even assuming, without deciding, that [Mobile] County would be a proper venue for the [Garfields]' breach-of-contract claim if that claim were asserted alone, the inclusion of that claim within the [Garfields]' complaint does not affect the requirement of Rule 82(b)(1)(B) that this action be brought in the [Baldwin] Circuit Court."

Ex parte Mullen, ____ So. 3d at ____.

## Conclusion

The defendants have demonstrated that the residence located on the Garfields' real property in Baldwin County is the "subject matter" of this action within the meaning of Rule 82(b)(1)(B).  Consequently, the Mobile Circuit Court clearly exceeded its discretion by denying the defendants' motion to transfer this action to the Baldwin Circuit Court.

22

Therefore, the defendants' petition for the writ of mandamus is granted, and the Mobile Circuit Court is hereby directed to vacate its order denying the defendants' motion to transfer the action and to enter an order transferring the action to the Baldwin Circuit Court.

PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Wise, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.

Shaw and Sellers, JJ., concur in the result.